NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JEROME H., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.H., *Appellees.*

No. 1 CA-JV 17-0314
FILED 12-7-2017

Appeal from the Superior Court in Maricopa County
No. JD 529797
The Honorable Janice K. Crawford, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee, Department of Child Safety*

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which
Presiding Judge Michael J. Brown and Judge James B. Morse Jr. joined.

**C A M P B E L L**, Judge:

¶1         Jerome H. ("Father") appeals the juvenile court's order terminating his parental rights to his son, J.H.[1] He challenges the juvenile court's findings of abandonment and nine- and fifteen-months out-of-home placement under Arizona Revised Statutes ("A.R.S.") sections 8-533(B)(1), (B)(8)(a), and (B)(8)(c), respectively. Father also challenges the court's finding that termination was in the child's best interests. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND[2]

¶2         Father and Kaleah M. ("Mother") lived in California with the child and Mother's two other children. In August 2015, California Child Protective Services ("CPS") initiated an investigation to determine if Father and Mother were neglecting the children. There were also allegations that Father and Mother smoked marijuana and drank liquor in front of the children. A month after the investigation was initiated, Mother moved the children to Arizona. J.H was 9 months old when he arrived in Arizona.

¶3         In November 2015, Mother left the children in the care of their maternal great aunt ("Aunt"). In March 2016, the Department of Child Safety ("DCS") initiated a dependency action, at the Aunt's request, alleging the parents were not providing the children support for their basic needs. At the time, Father resided somewhere in California and did not have any contact with his son. Although the child and his half-siblings were initially placed with Aunt, DCS removed the children and placed them in foster care due to allegations of sexual abuse by an adult in Aunt's home.

¶4         DCS located Father in California and served him in July 2016 with notice of an October 6th dependency hearing. Father failed to appear, and the court found the child dependent. While the dependency was

---

[1] The underlying dependency addressed three children. The juvenile court terminated all biological parents' rights to each child; however, this appeal only addresses the termination of Father's rights to his son, J.H. Mother is not a party to this appeal.

[2] We review the record in the light most favorable to sustaining the juvenile court's decision. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted).

ongoing, Father had no contact with the child and failed to provide the child with support or participate in reunification services.

¶5            In January 2017, the court changed the case plan from reunification to severance and adoption. DCS moved to sever Father's parental rights on two grounds: abandonment and nine-months out-of-home placement.[3] A.R.S. § 8-533(B)(1), (B)(8)(a). Father moved to Arizona the same month. In February 2017, Father began supervised visits with the child and began to participate in reunification services.

¶6            In June 2017, the juvenile court held a contested severance hearing. The court found that Father abandoned the child and, despite his recent participation in services, he had been unable to remedy the circumstances that caused the child to be taken into DCS custody. Further, the court found there was a substantial likelihood he would not be capable of doing so in the near future. The court also found that termination of Father's parental rights was in the child's best interests. The court then terminated Father's parental rights to the child.

## DISCUSSION

### I.    Sufficient Evidence Supports Severance Based on Abandonment

¶7            Father argues the juvenile court erred in terminating his parental rights on the abandonment ground because he did in fact maintain a relationship with the child. Father also challenges the court's ruling on the nine- and fifteen-month out-of-home placement grounds.

¶8            A court may sever a parent's rights to his or her child if it finds by clear and convincing evidence one of the statutory grounds for severance exists, and by a preponderance of the evidence that severance is in the child's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 281-82, 288, ¶¶ 7, 41 (2005). We review an order terminating parental rights for an abuse of discretion and will affirm if the order is supported by sufficient evidence in the record. *Calvin B. v. Brittany B.*, 232 Ariz. 292, 296, ¶ 17 (App. 2013) (citation omitted). Because sufficient evidence in the record supports termination based on abandonment, we need not address Father's contentions as to the other grounds. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) (if evidence supports termination on any

---

[3] DCS later amended the motion to include the allegation of fifteen-months out-of-home placement. *See* A.R.S. § 8-533(B)(8)(c).

one statutory ground, this court need not consider challenges to the other grounds).

¶9        Section 8-533(B)(1) provides for the termination of parental rights in the case of abandonment, which is "the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision," and "includes a judicial finding that the parent has made only minimal efforts to support and communicate with the child." A.R.S. § 8-531(1). Abandonment is measured by a parent's conduct rather than a parent's subjective intent. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 18 (2000). When circumstances prevent a parent from exercising traditional methods of bonding with a child, the parent "must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Pima Cty. Juv. Action No. S-114487*, 179 Ariz. 86, 97 (1994). "Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment," A.R.S. § 8-531(1), which is not "automatically . . . rebutted merely by post-petition attempts to reestablish a parental relationship," *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 8 (1990).

¶10        The record supports the juvenile court's finding that Father abandoned the child. The DCS case manager testified Father had not parented the child since August 2015. While the child's move to Arizona may have prevented Father from traditionally bonding with the child, Father had no relationship with the child and failed to provide the child any support for approximately 17 months. *See* A.R.S. § 8-531(1). Moreover, Father did not assert his legal rights or attempt to reestablish a relationship with the child until after DCS moved to sever. Father's late attempt does not overcome the presumption that he previously abandoned the child for 17 months. *See JS-500274*, 167 Ariz. at 8.

¶11        While Father provided contradictory evidence, the juvenile court did not find this evidence persuasive. The court gave "little weight" to Father's testimony based on conflicting evidence and inconsistencies in that testimony. We will not disturb that finding. *See Jesus M.*, 203 Ariz. at 280, ¶ 4 (the juvenile court is in the best position to judge the credibility of witnesses and weigh the evidence); *see also Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 81, ¶ 13 (App. 2005) (reweighing evidence is not the function of this court). Accordingly, on this record, the court did not err in finding Father abandoned the child.

## II.    Severance is in the Child's Best Interests

¶12        Father argues the juvenile court erred in finding termination was in the child's best interests because Father is "able to parent the child by himself and can provide the child with a stable residence and [Father] has stable income." To establish that severance would be in the child's best interests, the court must find either that the child will benefit from termination or that the child will be harmed by continuation of the parental relationship. *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004). To determine whether the child would benefit, the court should consider relevant factors such as whether the current placement is meeting the child's needs, *Maricopa Cty. Juv. Action No. JS-8490*, 179 Ariz. 102, 107 (1994), whether the child is adoptable, and whether there is an adoption plan in place for the child, *Oscar O.*, 209 Ariz. at 334, ¶ 6.

¶13        Here, the record supports the juvenile court's finding that it was in the child's best interests to terminate Father's parental rights. The juvenile court found that the child has spent most of his life having no relationship with Father and in the custody of DCS. The court found the child's current placement is meeting his needs and would provide permanency and stability. The case manager testified the child was adoptable and doing well in foster care. The child has bonded with his half-siblings while living with them in a licensed foster home, which is willing to adopt. The juvenile court did not abuse its discretion by finding termination to be in the child's best interests.

## CONCLUSION

¶14        For the foregoing reasons, we affirm the juvenile court's order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:  AA