NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

NICOLE L.,
*Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, N.B.,
*Appellees.*

No. 1 CA-JV 18-0031
FILED 9-20-2018

Appeal from the Superior Court in Maricopa County
No. JD32064
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

COUNSEL

David W. Bell, Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Carol A. Salvati
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Randall M. Howe joined.

---

**J O H N S E N**, Judge:

¶1          Nicole L. ("Mother") appeals the superior court's order severing her parental rights. Because sufficient evidence supports the order, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2          In February 2015, the Department of Child Safety ("DCS") received a report that Mother's daughter, born in 2006, needed medical help for severe behavioral issues, which included punching, kicking, screaming, refusing to go to school and "lock[ing] herself into a bathroom stall," requiring a school custodian "to crawl under the door" to retrieve her. The child was living with her grandmother, who did not have legal authority to obtain treatment for her. DCS asked Mother to provide paperwork authorizing treatment. After a year passed without Mother authorizing treatment, DCS petitioned for dependency, alleging Mother was neglecting her child. The superior court granted DCS's petition in March 2016, approved a case plan of reunification and ordered DCS to provide Mother with services to facilitate reunification.

¶3          DCS referred Mother for a psychological evaluation. In June 2016, the psychologist reported Mother had unaddressed past trauma that affected her ability to parent and to bond with her child. According to the psychologist, Mother had neglected her daughter's needs and then minimized her neglect. The psychologist concluded that, due to Mother's "untreated mental health issues," history of neglecting her child's needs, limited insight, and financial and housing situation, the prognosis that she could demonstrate minimally adequate parenting skills in the foreseeable future was "*fair to poor*." The psychologist recommended Mother participate in various activities, including parent-aide services and parenting classes, "until she can demonstrate age-appropriate expectations" for her daughter and can meet her needs. The psychologist specifically stated that Mother required individual therapy to "address her untreated mental health issues including history of trauma as a child, report of being involved in a

domestic violence incident, limited insight into psychological issues, and tendency to minimize her role and responsibility in neglecting her child[]." Accordingly, the psychologist recommended Mother undergo individual therapy "for a minimum of" one year. He also recommended a bonding assessment "to clarify the quality of [the] bond" Mother had with her daughter.

¶4 Through the end of 2016, Mother participated in reunification services with mixed success. She submitted to a psychiatric evaluation and successfully passed drug tests. She claimed to have self-referred for individual counseling, but as of December 2016, the provider had shut down without forwarding records to verify her participation. Mother was unsuccessfully closed out of parent-aide services in November 2016, with the parent aide noting she acted like a friend to her daughter, not a parent.

¶5 On February 1, 2017, DCS notified Mother that it was referring her to another individual counseling provider and gave her the provider's telephone number. But Mother did not respond to the provider's initial attempts to begin services, delaying her intake appointment until April 10. The child by then had been placed with her aunt, and, with the parent-aide service closed out, the placement offered to provide Mother with supervised visits. But the placement rescinded that offer after Mother began appearing at her home without prior notice. Meanwhile, the DCS case worker left a telephone message on March 9 for Mother with contact information for a new therapeutic-visit provider. After Mother did not respond, the case worker telephoned her again on March 15, but her voicemail was full. The provider (the same provider assigned for Mother's individual counseling) finally reached Mother on April 7.

¶6 In May 2017, DCS moved the court to change the case plan to severance and adoption, and the court did so. DCS then filed a motion for severance on nine-month and fifteen-month time-in-care grounds under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(a) and (c) (2018).[1] In December 2017, the superior court held a severance hearing at which

---

[1] Absent material change since the relevant date, we cite the current version of a statute.

Mother and the DCS caseworker testified. The court severed Mother's parental rights on both grounds.[2]

¶7            Mother timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A) (2018), 12-120.21(A)(1) (2018), -2101(A)(1) (2018) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## DISCUSSION

### A.      Legal Principles.

¶8            The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). A party seeking termination of a parent-child relationship must prove: (1) by clear and convincing evidence, the existence of a statutory ground under A.R.S. § 8-533(B), *Michael J.*, 196 Ariz. at 249, ¶ 12; and (2) by a preponderance of the evidence, that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005).

¶9            The superior court is the trier of fact in a termination proceeding. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). We view the evidence and reasonable inferences drawn from the evidence in the light most favorable to sustaining the superior court's decision. *Id.* We will not reweigh the evidence and will not reverse unless no reasonable evidence supports the court's factual findings. *Id.*

### B.      15-Months' Out-of-Home Care.

¶10            To establish the 15-months' out-of-home placement ground for severance under § 8-533(B)(8)(c), DCS must show that (1) the child has been in an out-of-home placement under its supervision for a cumulative total of at least 15 months; (2) DCS has made "a diligent effort to provide appropriate reunification services"; (3) "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement"; and (4) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." On appeal, Mother does not dispute that her daughter has

---

[2]      The court also severed the rights of the child's father, who is not a party to this appeal. The court's severance order incorrectly stated that the child's grandmother was the placement at the time of severance. The court later issued a correction to reflect that the child's placement was the child's paternal aunt and uncle.

been in care for 15 months, but contests each of the other elements of severance.

**1.      DCS's efforts at providing reunification services.**

¶11      Mother first argues DCS failed to provide her with adequate reunification services.  Her argument is based on a challenge DCS raised at the severance hearing to a report from a therapeutic visitation provider that Mother had successfully completed that service.  DCS's position at the hearing was that the provider had closed Mother out without affirming that she had made the required behavioral changes.

¶12      The superior court found that Mother had waived any challenge to the adequacy of DCS services by failing to object at any point in the dependency.  On appeal, DCS likewise argues Mother has waived any argument about the adequacy of the therapeutic visitation services.

¶13      We will consider Mother's argument about the visitation services because it is not clear she had the opportunity to raise the issue before the termination hearing.  The therapeutic visitation provider closed Mother out in September 2017, stating she had successfully completed services.  The record does not clearly disclose that DCS questioned the provider's determination at the time.  Indeed, there is no evidence Mother learned more than a few days before the severance hearing of DCS's concern about the provider's conclusion that Mother had successfully completed the service.  Finally, after learning of DCS's concern, Mother cross-examined the DCS case worker on the topic at the hearing.

¶14      To satisfy DCS's obligation to provide reunification services under § 8-533(B)(8), DCS must prove it "made a reasonable effort to preserve the family." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 33 (App. 1999).  This requires DCS to "undertake measures with a reasonable prospect of success" and "provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id.* at 192, ¶¶ 34, 37.  It does not require DCS to provide "every conceivable service." *Id.* at 192, ¶ 37 (quoting *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994)).

¶15      The DCS case worker testified that, after determining the therapeutic visitation reports were deficient, she attempted to contact the provider.  When the provider did not respond, DCS reassigned Mother to another provider.  Although Mother had little time before the severance hearing to begin working with the new provider, DCS's efforts to remedy the problem it identified with the prior provider might have been successful

if Mother had begun therapeutic visitation in early March 2017, when she was first referred to the provider, rather than three months later in late June 2017.

¶16        Moreover, as the superior court noted in detail, DCS provided Mother numerous other services, including parenting classes, parent aide, supervised visitation, individual counseling and psychological evaluations. Those services gave Mother opportunities to develop her parenting skills and for professionals to assess her parenting skills and her temperament for parenting.   On this record, sufficient evidence supported the superior court's finding that DCS provided Mother "with the time and opportunity to participate in programs designed to improve [Mother's] ability to care for the child."  *Mary Ellen C.*, 193 Ariz. at 192, ¶ 37.

### 2.        Circumstances causing the out-of-home placement.

¶17        DCS was required to show Mother was unable to remedy the circumstances existing at the time of the severance hearing that "prevent[ed] [Mother] from being able to appropriately provide" for her child.  *See Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007).  In support of its conclusion that Mother had failed to remedy the circumstances that caused the out-of-home placement, the superior court found Mother did not have "housing appropriate for the child" and had not "made the behavioral changes . . . [or] demonstrated appropriate parenting skill[s] despite the services that were offered."

¶18        Sufficient evidence supports the court's findings.   Mother testified at the hearing that she recently moved in with a friend because there wasn't "enough room" for her at her prior residence.

¶19        As for the court's finding that Mother had not made the behavioral changes required to demonstrate she could properly parent her daughter, Mother delayed in beginning counseling and had not completed the psychologist's recommended year of counseling by the time of the termination hearing.   Mother's parent-aide provider closed her out unsuccessfully, noting that she acted more as the child's friend than her parent.  Although DCS referred her for visitation in March 2017, Mother had no visits with her child between March 2017 and the beginning of therapeutic visitation in June 2017, and from the closure of her therapeutic visitation in September 2017 until late November 2017.

¶20        Further, when DCS notified her that it had made an appointment with the psychologist for a second assessment in September 2017, just a few months before the severance hearing was to begin, Mother

did not show up for the appointment, explaining after the fact that she "couldn't find the time." The follow-up assessment would have allowed the psychologist to evaluate her progress over the 15 months since the first assessment in addressing the mental-health issues that were preventing her from properly parenting her daughter. It also could have triggered a bonding assessment that likewise would have allowed Mother to demonstrate her progress.

**¶21** In sum, substantial evidence supported an inference that Mother had not changed her behavior or demonstrated proper parenting skills, and so had not remedied the circumstances causing the out-of-home placement. Although the record contains countervailing evidence, we will not reweigh the evidence and will not reverse unless no reasonable evidence supports the superior court's factual findings. *Jordan C.*, 223 Ariz. at 93, ¶ 18.

### 3. The likelihood of Mother being capable of properly parenting the child in the near future.

**¶22** Sufficient evidence also supports the superior court's determination that there was a substantial likelihood Mother would not be capable of "exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c).

**¶23** The superior court based its determination in part on Mother's lack of stable housing, which is supported by the evidence. But other evidence also shows that Mother did not take advantage of the opportunities DCS offered her over the course of the dependency to demonstrate she had overcome her parenting challenges. As noted, the psychologist initially concluded that the prognosis that Mother could adequately parent the child in the near future was "*fair to poor*." He observed that Mother's history of trauma likely impaired her ability to bond with or parent her child and opined that there were "*reasonable grounds to believe*" Mother's inability to properly parent her child would continue "*for an indeterminate amount of time*," especially if Mother's condition remained untreated. The psychologist recommended Mother receive individual therapy for at least a year and participate in a bonding assessment. Mother failed to complete a year of individual therapy, however, and did not show up for a second psychological evaluation scheduled before a bonding assessment.

## C.     Child's Best Interests.

**¶24**      DCS can establish that severance is in the best interests of the child "by either showing an affirmative benefit to the child by removal or a detriment to the child by continuing in the relationship." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 14 (App. 2002).  When the superior court severs a parent-child relationship, the court "must include a finding as to how the child[] would benefit from a severance or be harmed by the continuation of the relationship." *Xavier R. v. Joseph R.*, 230 Ariz. 96, 99-100, ¶ 11 (App. 2012); *see also* A.R.S. § 8-538(A) (2018) (order terminating parental rights "shall recite the findings on which the order is based").

**¶25**      "In combination, the existence of a statutory ground for severance and the immediate availability of a suitable adoptive placement for [a child] frequently are sufficient to support a severance order." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 335, ¶ 8 (App. 2004).  The superior court found "there is a plan for adoption" by the paternal aunt and uncle, and "if the current case plan cannot for any reason move forward, the child is adoptable."  The caseworker testified she believes the child is adoptable based on her improved behavior, and that the child's current placement, her paternal aunt, is willing to adopt the child.

**¶26**      The superior court also found that the placement with her aunt aided the child in "maintaining relationships with extended family members."  Furthermore, the court found the child's aunt and uncle "provid[e] the child with a loving and nurturing home environment and the child has been thriving in [their] care."  These findings are supported by the caseworker's testimony that she had personally observed that the child had bonded with the aunt and uncle and that the aunt and uncle had been instrumental in improving the child's behavior.  In particular, the caseworker attributed the behavioral improvements to the child's aunt taking the child to behavioral coaching, individual counseling and monitoring the child's medication.  The caseworker further testified that the child does not object to permanent placement with the aunt and uncle.  The evidence in the record reasonably supports the superior court's finding that severance was in the child's best interests.

## CONCLUSION

¶27 Because the superior court's ruling terminating Mother's parental rights under the 15 months' time-in-care ground is reasonably supported by the evidence, we affirm. We need not address Mother's arguments regarding the nine-month out-of-home placement ground for termination. *See Michael J.*, 196 Ariz. at 251, ¶ 27.



AMY M. WOOD • Clerk of the Court
FILED: AA