IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

NOV 30 2004

COURT OF APPEALS
DIVISION TWO

|  |  |  |
|---|---|---|
| ARIZONA DEPARTMENT OF ECONOMIC SECURITY, CLARISSA O., SAVANNA O., TONY E., and GUADALUPE E., | ) ) ) ) | 2 CA-JV 2003-0075 2 CA-JV 2003-0076 2 CA-JV 2003-0077 |
|  | ) | (Consolidated) |
| Appellants, | ) |  |
|  | ) | DEPARTMENT B |
| v. | ) |  |
|  | ) | O P I N I O N |
| OSCAR O., | ) |  |
|  | ) |  |
| Appellee. | ) |  |
|  | ) |  |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. 15625600

Honorable Hector E. Campoy, Judge

REVERSED AND REMANDED WITH DIRECTIONS

Terry Goddard, Arizona Attorney General
  By Michelle R. Nimmo
Tucson
Attorneys for Appellant
Arizona Department of Economic Security

Law Office of Cynthia D. Ettinger, P.C.
  By Cynthia D. Ettinger
Tucson
Attorney for Appellants
Clarissa O. and Savanna O.

Cheryl S. Blum, P.C.
  By Cheryl S. Blum
Tucson
Attorney for Appellants
Tony E. and Guadalupe E.

Matthew A. Jasper                                                    Tucson
                                                       Attorney for Appellee

E S P I N O S A, Judge.

¶1        In this appeal, the Arizona Department of Economic Security (ADES) and two children contend the juvenile court erred by denying ADES's motion to terminate the father's parental rights, despite the existence of a statutory ground for severance and the immediate availability of a suitable adoptive placement for the children, based solely on the court's finding that terminating the father's rights is not in the children's best interests. Because the record contains no reasonable evidence to support such a finding but, rather, establishes the children's lengthy out-of-home placement, the marginal nature of the father's relationship with the children, potential harm to the children from continuing the relationship, and availability of a good adoptive home, we conclude that the trial court erred in not severing the father's parental rights.

**Factual and Procedural Background**

¶2        Clarissa O., born September 2, 1998, and Savanna O., born March 1, 2001, are the second and third of four children born to appellee Oscar O. and his wife, Lydia O. Clarissa and Savanna were adjudicated dependent in July 2001. Following a permanency hearing in October 2002, the juvenile court directed ADES to file a motion to terminate both parents' rights to the girls.

¶3    Lydia then executed a relinquishment of her parental rights, consenting to the girls' adoption by their maternal aunt and uncle, appellants Tony E. and Guadalupe E., with whom they have been living since June 2001. The juvenile court terminated Lydia's rights pursuant to the relinquishment. Oscar contested the severance of his rights, and after a lengthy hearing, the juvenile court found ADES had proved the statutory ground alleged, out-of-home placement pursuant to A.R.S. § 8-533(B)(8)(b). The court nonetheless denied the motion to sever Oscar's rights, finding that terminating them would be contrary to the best interests of the children. *See* § 8-533(B). ADES, the children, and the children's foster parents all appeal from the juvenile court's ruling.

**Standard of Review**

¶4    As the juvenile court acknowledged in its minute entry, the standard of proof in actions to terminate parental rights is clear and convincing evidence, Rule 66(C), Ariz. R. P. Juv. Ct., 17B A.R.S.; *Michael J. v. Arizona Department of Economic Security*, 196 Ariz. 246, 995 P.2d 682 (2000), and the party seeking termination bears the burden of persuasion, *In re Maricopa County Juvenile Action No. JS-6831*, 155 Ariz. 556, 748 P.2d 785 (App. 1988). A juvenile court as the trier of fact in a termination proceeding is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts. *Jesus M. v. Ariz. Dep't Econ. Sec.*, 203 Ariz. 278, 53 P.3d 203 (App. 2002). We therefore accept the juvenile court's findings of fact "unless no reasonable evidence supports those findings" and will affirm its severance order unless the order is clearly

3

erroneous. *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555, 944 P.2d 68, 70 (App. 1997).

**Discussion**

¶5　　　　In the single issue raised on appeal, appellants contend there was no reasonable evidence to support the juvenile court's conclusion that it would be contrary to the best interests of Clarissa and Savanna to terminate their "positive, though limited, relationship with their father." Oscar acknowledges the court failed to specify any evidentiary basis for its conclusion, but suggests the court "likely considered" testimony by various witnesses that the weekly supervised visits between Oscar and the girls were positive, appropriate, and apparently enjoyable and that the girls displayed affection toward Oscar during the visits. Nowhere in the juvenile court's lengthy minute entry, however, did it mention any of the testimony Oscar cites. The omission is notable here because of the volume of other evidence the court did specifically refer to in its seven-page ruling.

¶6　　　　To establish that terminating Oscar's parental rights was in the children's best interests, ADES was required to show that the girls would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship. *Jennifer B.*, 189 Ariz. at 557; *see also In re Maricopa County Juvenile Action No. JS-500274*, 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990). The existence of a current adoptive plan is one well-recognized example of such a benefit. *Id.*; *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 972 P.2d 684 (App. 1998); *In re Maricopa County Juvenile Action No. JS-6520*, 157 Ariz. 238, 756 P.2d

4

335 (App. 1988) (best interests of child in potentially foster-adoptive home favored severance so child could be free for adoption); *In re Maricopa County Juvenile Action No. JS-8441*, 175 Ariz. 463, 469, 857 P.2d 1317, 1323 (App. 1993) ("The benefit of severance to the child is that which the legislature intended: freedom to be adopted into a stable and nurturing home."); *In re Pima County Juvenile Action No. S-2460*, 162 Ariz. 156, 158, 781 P.2d 634, 636 (App. 1989) ("The immediate availability of an adoptive placement obviously weighs in favor of severance . . . ."); *see also In re Maricopa County Juvenile Action No. JS-501904*, 180 Ariz. 348, 884 P.2d 234 (App. 1994) (even without firm plan of adoption, severance benefits adoptable children by freeing them for adoption).

¶7 The undisputed evidence established that the girls' aunt and uncle are willing and immediately available to adopt them. The girls are still very young: when the severance trial concluded, Clarissa was four years old, and Savanna was two. Clarissa had lived with the aunt and uncle since she was seven months old, and Savanna since she was three months old. Both girls are emotionally attached to the aunt and uncle, whom they consider "mommy and daddy," and the juvenile court found "[t]he placement, by all accounts, is very positive and has provided an extremely beneficial effect on the children." The court further found that remaining in this placement is in the girls' best interests. As far as we have determined, the record is devoid of any evidence to the contrary.

¶8 In combination, the existence of a statutory ground for severance and the immediate availability of a suitable adoptive placement for the children frequently are

5

sufficient to support a severance order. *See e.g. James S.; Maricopa County No. JS-6520.* The juvenile court found both here but also concluded it would be contrary to the children's best interests either to terminate *or to expand* their limited relationship with Oscar, which was confined to two hours of supervised visitation a week. The court gave no reason for its conclusion, but followed it with this statement:

> The Court acknowledges the many bitter difficulties that the adults have endured as a result of this case. The Court acknowledges that there is a great deal of animosity between the [foster parents] and the father. The Court cannot terminate a parent's rights due to the inability of the adults to have a cooperative relationship.

Obviously, the court's statement addressed Oscar's parental rights, but it did not address the best interests of the children. Nor did the juvenile court comment on the potential effects on the children of a chronically high level of animosity and ongoing conflict between the adults in their lives.[1]

¶9 The juvenile court's failure to state an evidentiary basis for its contrary-to-best-interests conclusion is particularly notable in light of the other observations and factual findings the court made in its detailed and lengthy minute entry. They include the following:

• that Oscar has "a chronic history of substance abuse," had in the past abused prescribed narcotic medications, and had not complied with the random urinalysis requirements of his case plan;

---

[1] Several witnesses referred to the pronounced hostility and conflict between Oscar and the girls' aunt and uncle.

6

• that Oscar had a history of domestic violence, had subjected Lydia to episodes of violence, and that their inappropriately enmeshed relationship "remains problematic";

• that, "despite the diligent services offered by A.D.E.S.," Oscar had not adequately addressed the issues relating to his relationship with Lydia, which "renders him unable to adequately parent the children";

• that Lydia "remain[ed] extremely unstable as reflected in her recent continued drug use and suicidal behaviors," and Oscar's failure to resolve his issues "relating to his relationship with [her] would create tremendous instability in the lives of the children";

• that Oscar had never adequately parented any of his children, and there was no substantial likelihood he would be able to exercise proper parental care and control of Clarissa and Savanna in the near future;

• that "[t]he neglectful and chaotic lifestyle to which the children were exposed when the dependency petition was brought in this case would be repeated if the children were to be returned to the physical custody of the father";

• that, although the court could not conclusively determine whether Clarissa had been sexually abused by members of Oscar's family, her allegations "demonstrated several indicia of reliability" and that, because Oscar had flatly "repudiated any possibility that his brother or any other family member might have sexually abused his daughter," he "would not be vigilant of his daughters' contact with potential[ly] harmful individuals";

7

- that the girls "could not be safely returned to" Oscar;

- that Clarissa has spent "most of her life" and Savanna "the overwhelming majority" of hers with the girls' maternal aunt and uncle in a placement that is "very positive" and "extremely beneficial";

- that remaining with their aunt and uncle is in the girls' best interests; and

- that expanding the limited relationship they currently had with Oscar would not be in their best interests.

¶10    Virtually nothing in the six and one-half pages that precede the challenged conclusion supports or even foreshadows the juvenile court's determination that "it would be contrary to the best interests of the children to terminate" their relationship with Oscar. To the contrary, the court recited—without critique or comment—portions of the testimony of several witnesses, none of whom stated or even intimated that terminating Oscar's rights would have a negative effect on the children.

¶11    First, the court noted:

> A bonding and attachment specialist, Mr. Chuck Chiverton, recommended that the children remain in their placement . . . . Mr. Chiverton also recommended that the rights of the parents be terminated.
>
> Mr. Chiverton observed that the children identify the [aunt and uncle] as their attachment figures.  The children feel safe with the[m] . . . .

Chiverton testified at trial that both Clarissa and Savanna are very securely attached to their aunt and uncle, that Clarissa's attachment to Oscar is insecure with some avoidant and

8

disorganized behaviors, and that Savanna has no emotional attachment to Oscar at all, seeing him instead as solely a sociable figure. Chiverton further opined that Oscar was unlikely "to establish an attachment process with his daughters," given the unresolved issues surrounding Clarissa's alleged molestation and Oscar's failure to complete individual therapy.

¶12 The court next noted the testimony of Clarissa's therapist, who concurred with Chiverton's assessment that a deep bond existed between Clarissa and her aunt and uncle. The therapist testified that she had no concerns at all about the propriety of the children's placement. She reported the aunt and uncle had excellent parenting skills and had been receptive and responsive whenever she had made suggestions for modifying some of Clarissa's behaviors. Further, she testified, it was "critical" to Clarissa's development that a permanency decision be made "soon."

¶13 Finally, the court also recounted the testimony of the children's primary caseworker, Cheryl Russell, to the effect that the children were doing extremely well in their current placement and that, in Russell's opinion, terminating Oscar's parental rights would be in their best interests. The court's minute entry identifies no testimony or other evidence to the contrary.

¶14 We are mindful that our function on review is not to reweigh the evidence before the juvenile court or supersede its assessment of the evidence with our own. Our task for factual findings is solely to confirm that there is some reasonable evidence in the record to sustain them. *See Maricopa County No. JS-8441*, 175 Ariz. at 465, 857 P.2d at 1319

9

("[T]he issue on appeal is whether any reasonable evidence supports the juvenile court's findings."). After searching this record, we can find no evidence to support the court's conclusion that terminating Oscar's parental rights would be contrary to the best interests of Clarissa and Savanna.

¶15    The decision by Division One of this court in *Maricopa County No. JS-6831* provides an instructive contrast. The juvenile court in that case had similarly denied a motion to terminate parental rights, likewise finding that a statutory ground for severance had been proved "but that the best interests of the children required denial of the termination petition." 155 Ariz. at 557, 748 P.2d at 786. On appeal, Division One found the juvenile court's conclusion supported by the evidence, which it described as follows:

> Both Dr. Thal and Dr. Lavit testified that the contact and visitation between [the mother] and the children was beneficial to the children, that they recognized [the mother] as their natural mother, and that the potential for a deeper relationship between [the mother] and her daughters existed. There was no evidence that denial of termination would be detrimental to the children [and] the record contains no reference to potential adoption of the children by the [natural father and stepmother] . . . .

*Id*. at 559, 748 P.2d at 788. Here, conversely, there was no similar evidence that the girls' enjoyable weekly visits with Oscar were truly beneficial or important to them and no testimony about the possibility of a deeper relationship in the future. In fact, such evidence as there was pointed in the opposite direction. In further contrast, there was no evidence here that granting the termination would be detrimental to either of the children, for whom a suitable, permanent, adoptive home stood waiting.

10

¶16        Lacking any specific evidence that supports the conclusion that terminating Oscar's parental rights would somehow be detrimental to his young daughters, the record instead suggests Oscar falls squarely within the category of parents § 8-533(B)(8) was enacted to encompass:

> Legislative history suggests that this amendment [adding out-of-home placement as a ground for terminating parental rights] was in response to the increasing number of children in foster care whose parents *maintain parental rights but refuse to assume parental responsibilities*. The express purpose of the amendment is to "expedite the adoption of numerous children who remain in temporary foster care [for indeterminate lengths of time] with no hope of being returned to their natural parents and, in so doing[,] promote a stable and long-term family environment for these children." 1986 Ariz. Sess. Laws, Ch. 205 §§ 1 and 6.
>
> Thus, the intent of this provision was to enable children to have a permanent family through adoption.

*Maricopa County No. JS-6520*, 157 Ariz. at 243, 756 P.2d at 340 (emphasis added); *see also James S.*, 193 Ariz. 351, ¶ 18, 972 P.2d at 689. Precisely that opportunity for permanency and stability is available for these children, who—the evidence overwhelmingly suggests—have virtually no hope of ever being placed in Oscar's custody.

**Disposition**

¶17        Although a juvenile court clearly has authority to deny severance when the best interests of the children will not be served thereby, the court here articulated no reason for such a finding, nor does the evidence supply one. Having searched the record in vain for any reasonable evidence to suggest that severance and adoption were not in Clarissa's and

11

Savanna's best interests,[2] and finding clear, convincing, and virtually uncontroverted evidence in the record to support just the opposite conclusion, we reverse the order of the juvenile court and remand the case with directions to grant the motion to terminate Oscar's parental rights.

_____
PHILIP G. ESPINOSA, Judge

CONCURRING:


_____
JOHN PELANDER, Chief Judge



_____
M. JAN FLÓREZ, Presiding Judge


_____

[2]In *In re Maricopa County Juvenile Action No. JS-500274*, 167 Ariz. 1, 804 P.2d 730 (1990), the supreme court reversed a conclusion that termination of a father's rights was in the best interests of the child, holding that his past abandonment, standing alone, did not justify severance without additional proof of some affirmative benefit to the child that would result from severance. The child in that case was unrepresented by counsel, and the court noted that "the record on the issue of the best interests of the child might have been improved if [the child] had been appointed independent counsel." *Id.* at 8, 804 P.2d at 737. Here, Clarissa and Savanna had independent counsel, who supported the effort to terminate Oscar's rights.

12