NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ANNA S., MICHAEL T., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.S.T., *Appellees*.

No. 1 CA-JV 19-0361

FILED 4-30-2020

Appeal from the Superior Court in Maricopa County
No. JD530848
The Honorable Jennifer E. Green, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant Anna S.*

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant Michael T.*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellees Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Kenton D. Jones joined.

---

**W I L L I A M S**, Judge:

¶1        Anna S. ("Mother") and Michael T. ("Father") each appeal the juvenile court's order terminating their parental rights to their child ("Child"). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        In April 2017, then nineteen-month-old Child was found alone, unsupervised and crying outside of the hotel where Mother and Child were staying. When police arrived, they observed that Mother smelled of alcohol and showed signs of intoxication. Father, who lived in Oregon, had not had a relationship with Child for approximately a year. Police contacted the Department of Child Safety ("DCS") and Child was placed in the care of a relative in Arizona.

¶3        Following DCS' filing of a dependency petition, the court found Child dependent due to Mother's neglect, substance abuse, and mental health issues and because of Father's abandonment, neglect, failure to protect, and past domestic violence towards Mother.

¶4        Over the next several months DCS offered a range of services to the parents that included, in part, substance abuse testing and treatment, domestic violence counseling, psychological consultation and evaluation, transportation, supervised visits and parent aide services. By January 2018, approximately nine months later, Mother's contact with DCS and participation in reunification services had been inconsistent. That same month, Mother was involved in a physical altercation with the adult girlfriend of the relative whom Child was placed with, after Mother and the relative had been consuming alcohol. Father's participation in services had been more regular than Mother's and DCS considered placement of the Child with Father. However, individual(s) living with Father were unwilling to submit to a background check, therefore placement with Father did not occur at that time.

**¶5**         In July 2018, Child was moved to Oregon and placed with a different relative. The case plan was changed from family reunification to severance and adoption. In August 2018, DCS filed a motion to terminate each parents' rights to the Child, alleging Mother's neglect and history of substance abuse, and that both parents were unable to timely remedy the circumstances giving rise to Child's out-of-home placement.

**¶6**         In February 2019, Father's second request to have Child placed with him was approved. After a transition period, in May 2019 Child moved in with Father. A safety plan allowed Mother visits with the Child if supervised by the relative Child was previously placed with.

**¶7**         In June 2019, Oregon DHS (the equivalent to Arizona DCS) made two unannounced visits to Father's residence to check on Child's welfare. At the first visit they found luggage, the contents of which belonged to a woman. Father claimed the luggage belonged to a female friend. At the second visit, Oregon DHS found Mother at the home. Father admitted to lying to Oregon DHS previously, and that it was Mother's luggage at the house. Mother appeared to be intoxicated, and both parents refused a drug test. Because Father allowed Mother access to the Child outside of the DCS approved safety plan, Child was placed with a third relative in Arizona.

**¶8**         Between January 2019 and June 2019, Mother participated in substance abuse treatment in Oregon, but was unable to produce evidence that she successfully completed the program.

**¶9**         A severance trial was held in August 2019. The juvenile court later issued a comprehensive ruling terminating both parents' rights to Child. Mother and Father each timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶10**         "To justify termination of the parent-child relationship, the [juvenile] court must find, by clear and convincing evidence, at least one of the statutory grounds set out in [A.R.S. §] 8-533, and also that termination is in the best interest of the child." *Michael J. v. Ariz. Dep't. of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000); *see also* A.R.S. § 8-533(B).[1] As the trier of fact in a

---

[1]         The court must also find that DCS made diligent efforts to provide appropriate reunification services. *See* A.R.S. § 8-533(B)(8). On appeal,

termination proceeding, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't. of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). We "accept the juvenile court's findings of fact 'unless no reasonable evidence supports those findings' and will affirm its severance order unless the order is clearly erroneous." *Id.* at 334, ¶ 4 (quoting *Jennifer B. v. Ariz. Dep't. of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997).

¶11 Both parents challenge the sufficiency of evidence justifying termination of the parent-child relationship under A.R.S. § 8-533(B)(8)(c), which requires that: (1) the child has been in an out-of-home placement for a cumulative total period of fifteen months or longer; (2) the parent has been unable to remedy the circumstances that caused the child to be in an out-of-home placement; and (3) there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

## I. Fifteen Months Out-of-Home Placement

¶12 Neither parent challenges whether Child was placed out-of-home for more than fifteen months. For more than two uninterrupted years, from April 2017 to May 2019, Child was in an out-of-home placement. At the time of the severance trial, Child had been in an out-of-home placement for twenty-seven of the twenty-eight months the dependency action had spanned.

## II. Inability to Remedy Circumstances Causing Out-of-Home Placement

¶13 Mother argues that by the time the severance trial took place she had remedied the circumstances that led to Child's removal from her care in 2017. Although there is evidence Mother made efforts to participate in a substance abuse treatment program from January 2019 to June 2019 in Oregon, and sporadically throughout the dependency, Mother was unable to provide proof that she successfully completed the program. While in the program and within a few months of the severance trial, following a dispute with her then boyfriend, Mother admitted to "drinking all weekend." And when Oregon DHS made an unannounced visit to Father's home, Mother was present and appeared to be intoxicated. Mother declined a referral to continue substance abuse treatment upon her return to Arizona.

---

neither parent challenges this issue, nor whether termination of the parent-child relationship was in Child's best interest.

**¶14** In addition to Mother's failure to meaningfully address her alcohol use and demonstrate long-term sobriety, the juvenile court also determined Mother failed to establish stable housing or employment. The court's conclusion that each of these circumstances remained unremedied is supported by the record.

**¶15** Although it was not Father's substance abuse, housing or employment that initially gave rise to the dependency action and Child's out-of-home placement, Father failed to protect Child from those circumstances relating to Mother. Two years after Child's removal from Mother, Child was placed with Father for a month. During that month Father "violated the rules of the safety plan at least twice," and lied about one of them, by allowing Mother access to the Child without supervision of an approved adult and "allowed Mother to be intoxicated around [Child]." The juvenile court's findings are supported by the record, as is the court's conclusion that the circumstance of Father's failure to protect Child and ensure her safety from Mother's alcohol use remained unremedied by the time the severance trial took place.

> III. *Substantial Likelihood that the Parents Will Not Be Capable of Exercising Proper and Effective Parental Care and Control in the Near Future*

**¶16** The dependency spanned more than two years and Mother never demonstrated she could be consistently sober. Her efforts and willingness to engage in services were inconsistent throughout. Although Mother did enroll in a substance abuse treatment program in 2019, her failure to show proof of completing the program, coupled with her significant history of alcohol abuse, led the juvenile court to conclude that there was a substantial likelihood Mother's alcohol dependence would not change in the near future. In addition, her intoxication in June 2019, when Oregon DHS visited Father's home was within only a few months of the severance trial. Thus, reasonable evidence supports the court's conclusion that there remained a substantial likelihood Mother would be incapable of exercising proper and effective parental care and control into the near future.

**¶17** Although Father generally engaged in and completed services, the juvenile court gave great weight to Father's decision to allow Mother access to the Child within weeks of Child being placed with Father. As discussed *supra*, the court noted Mother was intoxicated at the time. And, although Father denies the same, as well as knowing that he could not

supervise Mother's visitation with Child, the court made a credibility determination and concluded otherwise.[2]

¶18 The court noted that "[Father] has shown that he will not act to protect [Child] from unsupervised contact with Mother or to protect [Child] from Mother's substance abuse." Father's ability and willingness to protect Child from Mother's alcohol use was at the center of the out-of-home placement and dependency from the outset. Thus, given the closeness in time between Father's willingness to allow an intoxicated Mother near Child in violation of the safety plan, and the severance trial that occurred more than two years after Child was first placed in an out-of-home placement, the record supports the court's conclusion that "[Father's] actions demonstrate he is unable to care for [Child] safely in the near future." Although we recognize that a different judicial officer could come to a different conclusion, we cannot say this conclusion was clearly erroneous.

¶19 Because we affirm the juvenile court's order on the basis of fifteen months in an out-of-home placement, we need not address whether termination as to Mother was appropriate under A.R.S. § 8-533(B)(2) (neglect of a child) or A.R.S. § 8-533(B)(3) (history of chronic substance abuse). *See Jesus M. v. Ariz. Dep't. of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

**CONCLUSION**

¶20 We affirm the juvenile court's order terminating both Mother's and Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[2] The juvenile court is in the best position to weigh the evidence and determine the credibility of testimony in making its findings. *See Oscar O.*, 209 Ariz. at 334, ¶ 4.