NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BRANDI C., JESSE G., *Appelants*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.G., *Appellees*.

No. 1 CA-JV 20-0239
FILED 12-15-2020

Appeal from the Superior Court in Maricopa County
No. JD36171
The Honorable Robert Brooks, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant Brandi C.*

Robert D. Rosanelli, Phoenix
*Counsel for Appellant Jesse G.*

Arizona Attorney General's Office, Tucson
By Autumn L. Spritzer
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge James B. Morse Jr. and Judge Maria Elena Cruz joined.

_____

**M c M U R D I E**, Judge:

¶1 Appellants Brandi C. ("Mother") and Jesse G. ("Father") appeal the juvenile court's order terminating their parental rights to their child, John.[1] For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 After officers arrested Mother and Father at a traffic stop in Prescott Valley, the Department of Child Safety ("DCS") became involved with the child. During the traffic stop, the officers discovered Mother and Father each had pending arrest warrants. John was in the vehicle. The officers searched the car and found marijuana, a marijuana pipe, a used methamphetamine pipe, and a bindle bag. John was initially placed into DCS's temporary physical custody and then placed with his maternal aunt, where he has remained since his removal.

¶3 Father was released shortly after his arrest. Following her arrest, Mother served a prison sentence for prior probation violations. Mother was released in February 2019 but incarcerated again in December 2019 for violating the terms of the probation sentence she received due to the June 2018 traffic stop. She was released from this sentence in March 2020.

¶4 In August 2018, DCS filed a dependency petition alleging Mother and Father each were unable to provide proper and effective parental care and control because both parents had issues with substance abuse and had allegedly abused or neglected John as evidenced by an unexplained bruise on his forehead. Also, DCS alleged Mother was unable to parent because she was incarcerated. Mother did not contest the petition, and John was adjudicated dependent regarding Mother in September 2018.

_____

[1] To protect the child's identity, we refer to him by a pseudonym.

John was adjudicated dependent regarding Father in November 2018 after a contested dependency hearing.

**¶5** While in prison, Mother attended mandatory drug counseling starting in October 2018. When she was released, DCS referred her for a substance-abuse assessment, in addition to testing and treatment. She participated inconsistently, tested positive for several illegal drugs, including methamphetamine, on multiple occasions, and did not complete the substance-abuse program. Mother claimed she was not intentionally using methamphetamine during this period and that she suspected her drug tests had come back positive because of laced marijuana. She admitted she had regularly used marijuana and methamphetamine for around ten years, starting at age thirteen or fourteen.

**¶6** DCS referred Father to a substance-abuse program five times, but he failed to complete the program. Father participated inconsistently with drug testing and tested positive for methamphetamine and marijuana several times. DCS also provided Father with a psychological evaluation. As part of the assessment, the evaluator recommended DCS provide Father with counseling from a therapist with master's level training to address his substance-abuse history. However, DCS never provided Father with this service.

**¶7** DCS also referred Mother and Father to a parent aide who supervised visits with John. Mother and Father attended visitation sporadically and eventually stopped participating entirely. After Mother and Father stopped participating, DCS stopped providing the service. Shortly before the termination hearing, Father reengaged with the DCS case manager, and another parent aide was referred.

**¶8** In February 2020, DCS moved to terminate the parent-child relationship between Mother and Father and John on the grounds of chronic substance abuse and time in care under A.R.S. sections 8-533(B)(3) and (B)(8)(c). After a contested termination hearing, the juvenile court granted DCS's motion and terminated Mother's and Father's parental rights. The court found that Mother and Father each (1) had a history of substance abuse, (2) were unable to discharge their parental responsibilities, and (3) were chronic abusers of illegal substances, which made it reasonable to believe their substance abuse would continue indefinitely. The court further found DCS had made reasonable efforts to reunify the family.

**¶9**      Mother and Father each appealed, and we have jurisdiction under A.R.S. §§ 8-235(A) and 12-120.21(A)(1).

**DISCUSSION**

**¶10**      We view the evidence in the light most favorable to affirming the juvenile court's order and will affirm a termination order supported by reasonable evidence. *Christina G. v. ADES*, 227 Ariz. 231, 234, ¶ 13 (App. 2011); *Jordan C. v. ADES*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

**¶11**      The juvenile court found two separate grounds for termination. We will affirm the court's order if we conclude the evidence was sufficient to support either basis for termination. *Michael J. v. ADES*, 196 Ariz. 246, 251, ¶ 27 (2000). We do not reweigh the evidence and have recognized the "juvenile court as the trier of fact in a termination proceeding is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *ADES v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).

**¶12**      Under A.R.S. § 8-533(B)(3), a court may terminate a parent's rights if

> the parent is unable to discharge parental responsibilities because of mental illness, mental deficiency or a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period.

Before a court may sever the parent-child relationship under A.R.S. § 8-533, the State must establish it made reasonable efforts to reunify the family. *Mary Ellen C. v. ADES*, 193 Ariz. 185, 192, ¶ 33 (App. 1999). The State is not required "to undertake rehabilitative measures that are futile" but must "undertake measures with a reasonable prospect of success." *Id.* at ¶ 34.

**¶13**      Mother and Father each argue the State failed to show it made reasonable efforts to reunify the family. Mother argues she did not have an opportunity to participate in DCS's remedial services because she was incarcerated during a portion of the period John was placed out of the home. But DCS provided Mother with referrals for services in the periods before and after her prison sentences and encouraged Mother to participate in the services available to her in prison. The juvenile court's finding that DCS made reasonable efforts at reunification was supported by appropriate evidence on this record.

¶14 Father argues DCS failed to meet its obligations because it did not refer him to a therapist with master's level training. DCS argues Father waived this issue because he raised it for the first time on appeal. The juvenile court directly addressed this issue in its order. The court found that because Father had refused to participate in the services DCS *had* offered, DCS's efforts could be fairly characterized as reasonable despite its failure to provide Father with master's level counseling.

¶15 We agree with the juvenile court's assessment. DCS is not required to take futile measures. Based on the evidence in the record regarding Father's failure to participate in drug testing and treatment, it was within the juvenile court's discretion to conclude that DCS's efforts were reasonable despite its inability to provide additional services. And because we conclude DCS made reasonable efforts to reunify Father with John, we need not consider whether Father waived the issue. *City of Tempe v. Fleming*, 168 Ariz. 454, 456 (App. 1991) (Whether a litigant can raise on appeal an argument not made in the superior court is procedural, not jurisdictional, and may be suspended at the appellate court's discretion.).

¶16 Also, Mother argues DCS failed to prove chronic substance abuse by clear and convincing evidence. At the termination hearing, Mother testified that her methamphetamine use was unintentional. As a result, Mother now contends the court could not have reasonably concluded she was engaged in chronic substance abuse.

¶17 The juvenile court explicitly found that Mother's testimony, in which she claimed her marijuana had been laced with methamphetamine, was not credible. Throughout this case, Mother was found carrying methamphetamine paraphernalia, tested positive for methamphetamine on several occasions, and testified that she had used methamphetamine for over ten years, starting at age thirteen or fourteen. Given this evidence, we conclude the juvenile court's findings regarding Mother's substance abuse were supported by reasonable evidence.

¶18 Mother also argues DCS did not establish that it diligently provided appropriate reunification services and that she substantially neglected or willfully refused to remedy the circumstances causing John's out-of-home placement as required under § 8-533(B)(8)(c). Because we conclude reasonable evidence supported termination on the ground of chronic substance abuse, we need not address this argument. *Michael J.*, 196 Ariz. at 251, ¶ 27.

## CONCLUSION

¶19      We affirm the juvenile court's order terminating Mother's and Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:    AA