NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

THOMAS K.,
*Appellant,*

v.

DEPARTMENT OF CHILD SAFETY, A.K.,
*Appellees.*

No. 1 CA-JV 21-0075
FILED 8-12-2021

Appeal from the Superior Court in Yavapai County
No. P1300JD201900045
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge David B. Gass joined.

---

**M O R S E**, Judge:

¶1   Thomas K. appeals the termination of his parental rights. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2   Thomas K. ("Father") and Jasmine M. ("Mother") are the parents of A.K. ("the Child"), who was born in 2018.[1] In March 2018, the Department of Child Services ("DCS") reported concern about Father's parenting ability due to "developmental disabilities," "diminished lack of support in the home," and his tendency to "become[] violent and threaten[] harm to others." Father sometimes threw things at Mother and, in February 2019, pushed her into traffic while she held the Child.

¶3   In May 2019, DCS implemented a safety plan requiring the Child's paternal grandparents to ensure the Child was never alone with Father and Mother. In June 2019, DCS removed the Child from the home after discovering the grandparents violated the safety plan and Father and Mother had domestic-violence altercations in the Child's presence. On the day of the Child's removal, "Father tried yanking [the Child] out of [Mother's] arms when DCS was in the home . . . because he was mad at [Mother]." The court found the Child dependent in July 2019 and implemented a case plan of family reunification.

¶4   DCS provided Father transportation services and referred him for a psychological evaluation, individual and family counseling, domestic-violence and anger-management education, parenting classes, and psychiatric and medication-management services. Father received behavioral-health services through West Yavapai Guidance Clinic ("WYGC"), including counseling, psychiatric services, medication

---

[1]  Mother's parental rights were terminated in January 2021 and is not a party to this appeal.

management, and "specialized therapy for those with cognitive limitations." Father also attended Alcoholics Anonymous meetings and, in June 2020, checked into an inpatient care facility for alcohol-abuse treatment. But Father had not sufficiently addressed his diminished protective capacities before his referrals for parenting classes closed out in May and July 2020.

¶5　　　　In December 2020, DCS moved to terminate Father's parental rights on the grounds of neglect, mental deficiency, and fifteen-months' care in an out-of-home placement. The juvenile court held a hearing and found termination justified on all three grounds. It further found that termination was in the Child's best interests and terminated Father's parental rights.

¶6　　　　Father timely appealed. We have jurisdiction under A.R.S. §§ 8-235, 12-120.21(A), and -2101(A)(1).

## DISCUSSION

¶7　　　　Parental rights are fundamental, but not absolute. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97, ¶ 7 (App. 2016). A court may terminate a parent's right in the care, custody, and management of their children "if it finds clear and convincing evidence of one of the statutory grounds for severance, and also finds by a preponderance of the evidence that severance is in the best interests of the children." *Id.* at 98, ¶ 7.

¶8　　　　The juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). We do not reweigh evidence or reevaluate witness credibility. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to affirming the juvenile court's order and will affirm unless "reasonable evidence does not support its factual findings." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

## I. Neglect.

¶9　　　　Father argues the superior court erred in finding he neglected the Child. Parental rights may be terminated if the court finds that a parent "has neglected . . . a child." A.R.S. § 8-533(B)(2). "Neglect" is defined as "[t]he inability or unwillingness of a parent, guardian or custodian of a child to provide that child with supervision, food, clothing, shelter or medical

care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare . . . ."  A.R.S. § 8-201(25)(a).

¶10      The juvenile court based its neglect finding on: (i) evidence that Father "was unable or unwilling to provide [the Child] with supervision, food, clothing, shelter, or medical care which caused . . . an unreasonable risk of harm to [the Child's] health and/or welfare;" (ii) Father's history of domestic violence; and (iii) Father's inability "to recognize and meet" the Child's needs due to his mental deficiency.

¶11      Father contends that his domestic violence and mental-health issues do not render him unfit to parent.  However, Father does not dispute the court's finding that he "was unable or unwilling to provide [the Child] with supervision, food, clothing, shelter, or medical care which caused . . . an unreasonable risk of harm to [the Child's] health and/or welfare . . . ."  This finding is supported by the testimony of the Case Manager, who said that Father had been unable to maintain safe and appropriate housing, had struggled during supervised visits to "recognize when his daughter needed support regarding her basic needs for food [and] changing," and remains unable to drive, read, or take himself to the doctor to refill prescription medications.  Thus, reasonable evidence supports the juvenile court's finding that Father neglected the Child.

## II.  Reasonable Efforts.

¶12      Father argues termination was not justified on mental-deficiency and out-of-home placement grounds because DCS failed to make reasonable efforts to provide him appropriate reunification services.  *See Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 191-93, ¶¶ 27, 34, 42 (App. 1999) (noting that termination based on time in an out-of-home placement or mental deficiency must include proof that DCS "made a reasonable effort to provide [the parent] with rehabilitative services or that such an effort would be futile").  Because we affirm the juvenile court's neglect finding, however, we decline to address Father's reasonable-efforts claims.  *See Jesus M.*, 203 Ariz. at 280, ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

## III.   Best Interests.

¶13      The juvenile court found by a preponderance of evidence that it was in the Child's best interests to terminate Father's parental rights.  Father does not challenge that finding.  *See Crystal E. v. Dep't of Child Safety*,

241 Ariz. 576, 577-78, ¶¶ 5-6 (App. 2017) ("[W]e adhere to the policy that it is generally not our role to *sua sponte* address issues not raised by the appellant."). Accordingly, Father has failed to show the juvenile court erred in terminating his parental rights.

**CONCLUSION**

¶14  We affirm the juvenile court's order.



AMY M. WOOD • Clerk of the Court
FILED: AA