NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

NINA V.,
*Appellant,*

v.

DEPARTMENT OF CHILD SAFETY, T.R., E.R., G.R.,
*Appellees.*

No. 1 CA-JV 22-0095
FILED 10-20-2022

---

Appeal from the Superior Court in Mohave County
No. B8015JD202104007
The Honorable Rick A. Williams, Judge

**AFFIRMED**

---

COUNSEL

Your AZ Lawyer, Phoenix
By Robert Ian Casey
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Michelle R. Nimmo
*Co-Counsel for Appellee Department of Child Safety*

The Huff Law Firm, PLLC, Tucson
By Daniel R. Huff, Laura J. Huff
*Co-Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Michael J. Brown joined.

---

**M O R S E**, Judge:

¶1 Nina V. ("Mother") appeals the termination of her parental rights to her three children. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 Mother has three children, T.R. born in 2005, E.R. born in 2011, and G.R. born in 2021. The children's father is not a party to this appeal.

¶3 In 2015 and 2017, the Department of Child Safety ("DCS") received and investigated reports that Mother neglected the children. In 2019, DCS again investigated Mother and found Mother's home in hazardous conditions due to rat urine and feces. Police later searched Mother's home and found three pipes containing methamphetamine residue. According to DCS reports, the methamphetamine pipes were "accessible to the children." Despite DCS efforts, Mother refused to engage in services.

¶4 In February 2021, days before G.R.'s birth, Mother tested positive for THC and amphetamines. After G.R.'s birth, DCS received a hotline report alleging G.R. was born substance-exposed to amphetamines and THC. DCS conducted a home-check and again found Mother's home in hazardous conditions due to rat feces. The court ordered the children into temporary out-of-home care.

¶5 DCS filed a dependency petition alleging Mother neglected to provide a safe home and proper parental care due to substance abuse. The superior court adjudicated the children dependent and ordered them to remain in out-of-home care.

¶6 During dependency, Mother completed parenting classes and an "Alcohol and Other Drugs Course." She also participated in visits with the children, provided groceries for T.R. and E.R.'s placement, and provided diapers, wipes, and clothes for G.R.'s placement. However, Mother failed to engage in mental and behavioral-health services,

substance-abuse counseling, and urinalysis testing. Mother refused to submit to urinalysis testing because it was not court ordered, and did not acknowledge the dangers posed by the home's hazardous conditions. The court told Mother that it considered failure to participate in drug testing a "red flag."

¶7   At the initial permanency hearing on July 15, 2021, DCS requested a 60-day supplemental permanency hearing to give Mother more time to engage in services. The court set the hearing for September 2021 but advised Mother that she would not get the "children back" unless she completed drug testing.

¶8   When Mother finally submitted to a hair follicle test in August 2021, she tested positive for methamphetamine and amphetamines. The test indicated Mother regularly used methamphetamine. Because Mother tested, DCS again requested a 60-day continuance at the September hearing. The court set the hearing for October 2021 but was "underwhelmed" by Mother's efforts and discussed changing the case plan. At the October hearing, the court concluded reunification would not be possible and changed the case plan to "severance and adoption" because Mother refused to provide continued evidence of sobriety.

¶9   After the subsequent termination hearing in early 2022, the court found DCS made reasonable efforts to provide Mother with rehabilitative services, and had made those services available for nearly a year. The court also found clear and convincing evidence that Mother has a substance-abuse disorder based on evidence of alcohol, THC, and methamphetamine use for several years. The court noted Mother refused to acknowledge that substance abuse could hinder her ability to discharge parental responsibilities and the risk that her drug use posed to the children, and found Mother's condition would continue for a prolonged time because she refused to cooperate in services and to submit to periodic urinalysis. The court also found, by clear and convincing evidence, Mother neglected the children by failing to provide a safe home. Thus, the court found DCS had proved the nine-month time-in-care ground for termination under A.R.S. § 8-533(B)(8)(a).

¶10   As to best interests, the court found the children were adoptable because the out-of-home placement was "the least restrictive environment" and the children's aunt was a "potential adoptive placement." If the children's aunt was unable to adopt the children, DCS would find an "alternative placement." The court also considered Mother's refusal to engage in services and submit to drug testing. The court had "no

confidence" Mother would "improve [her] engagement in the future," so it was likely the children's circumstances would not change. The court reasoned that without termination the children would be in DCS's care "in perpetuity," but termination would allow the children to "be adopted, have safety, love and security so they can grow and thrive." The court recognized that T.R. opposed termination and adoption and wanted to maintain her birth certificate and family ties, but also noted that T.R. did not want to reunify with Mother. Despite T.R.'s wishes, the court found termination was in T.R.'s best interests and concluded delaying permanency was contrary to the children's best interests.

¶11      Mother timely appealed. We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

¶12      Parents have a fundamental right to the custody and control of their children, but that right is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶¶ 11-12 (2000). To terminate parental rights courts must (1) find by clear and convincing evidence a statutory ground under A.R.S. § 8-533 and (2) determine by a preponderance of the evidence that termination is in the child's best interests. *Id.* at 249, ¶ 12 (clear and convincing evidence); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005) (preponderance of the evidence); *see* A.R.S. § 8-533(B) (requiring at least one statutory ground and a best-interests finding). Because the trial court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004), we accept the court's "findings of fact if reasonable evidence and inferences support them," and will affirm the termination order "unless it is clearly erroneous," *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016).

¶13      Mother does not challenge the court's statutory grounds for termination. Mother only challenges the court's best-interests finding.

¶14      When determining whether termination is in the child's best interests, "courts must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018). Moreover, a court's "primary concern" is the "child's interest in stability and security." *Id.* at 150, ¶ 12 (quoting *Demetrius L.*, 239 Ariz. at 4, ¶ 15). "[T]ermination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if

severance is denied." *Id.* at ¶ 13. Although best interests focuses on the child, the court may consider the parent's efforts and statutory grounds. *See id.* at ¶ 15 (considering a parent's rehabilitation efforts); *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 11 (App. 2016) (considering how the continued presence of a statutory ground may negatively affect a child).

**¶15**        Courts need not "list *every* fact upon which [their] findings are based" as it would impose an "undue burden and inappropriate task" on courts. *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 19 (App. 2007). We view "the record in the light most favorable to upholding the court's best-interests finding." *Alma S.*, 245 Ariz. at 152, ¶ 21. We do not reweigh factual or credibility determinations. *See Oscar O.*, 209 Ariz. at 336, ¶ 14 ("Our task for factual findings is solely to confirm that there is some reasonable evidence in the record to sustain them.").

**¶16**        Mother argues the court erred in finding termination was in the children's best-interests because the court failed to consider alternatives to adoption, the children's bond to family, and the effect on the children rather than Mother's efforts. Mother also argues insufficient evidence supports the court's best-interests finding. We disagree.

## I.        Adoptability.

**¶17**        Mother argues the court erred in considering termination and adoption because T.R. did not want to be adopted. Mother also suggests that DCS failed to explore other options, such as guardianship for T.R. Though T.R. neither wanted to be adopted nor believed termination was in her best interests, she did not want to reunify with Mother. The court recognized that "termination may be contrary to [T.R.'s] wishes but it is not contrary to her best interest." The court considered T.R.'s desire to "maintain a connection" with Mother and that T.R. did not want her birth certificate to change. But the court noted the children's aunt was a potential adoptive placement and concluded that termination was still in T.R.'s best interests. *See Demetrius L.*, 239 Ariz. at 4, ¶ 12 ("When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination of parental rights . . . is in the child's best interests.").

**¶18**        Also, the record showed the children were doing well in their aunt's care, and the aunt has provided care for T.R. and E.R. in the past. The court could choose to weigh the opportunity for adoption, permanency, and stability provided by termination, over T.R.'s desires or the impermanency provided by a guardianship. *Alma S.*, 245 Ariz. at 150, ¶ 12

(emphasizing "stability and security" are a court's "primary concern"). Reasonable evidence in the record supports the children's adoptability and we find no error in how the court weighed the factors.

## II.        Rehabilitation Efforts.

**¶19**        We reject Mother's argument that the best-interests finding improperly focuses on Mother's lack of rehabilitation rather than the children. *See Alma S.*, 245 Ariz. at 148, ¶ 1 (holding "courts must consider the totality of the circumstances" including a parent's rehabilitation in making a best-interests finding). The court heard and considered evidence that Mother's substance abuse and lack of engagement would negatively impact the children by delaying permanency. *See Dominique M.*, 240 Ariz. at 98, ¶ 11 (considering how the continued presence of a statutory ground may negatively affect a child).

**¶20**        We also reject Mother's argument that the court failed to consider family bonds and discounted Mother's interactions during visits. The court considered Mother's participation in visits and acknowledged that T.R. wanted to "maintain a connection" with Mother, but also highlighted Mother's refusal "to provide evidence of sobriety." The court "considered and weighed all" the evidence, including testimony from a DCS worker and DCS reports that visits went well, but found termination was in the children's best interests. We do not reweigh the evidence considered by the trial court. *Oscar O.*, 209 Ariz. at 336, ¶ 14.

**¶21**        Reasonable evidence supports the court's finding that DCS established, by a preponderance of the evidence, that the children were adoptable and Mother's rehabilitation efforts were inadequate. Thus, the court did not clearly err in finding that termination was in the children's best interests. *See Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (affirming a termination order if it is supported by reasonable evidence in the record); *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004) (noting a court's findings of fact are clearly erroneous when there is "no reasonable evidence to support them").

## CONCLUSION

¶22 We affirm the superior court's termination order.



AMY M. WOOD • Clerk of the Court
FILED: AA