NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE
TERMINATION OF PARENTAL RIGHTS AS TO J.J.

No. 1 CA-JV 22-0176
FILED 4-11-2023

---

Appeal from the Superior Court in Maricopa County
No. JD36375
JS20711
The Honorable David O. Cunanan, Judge, *Retired*

**AFFIRMED**

---

COUNSEL

Gillespie Shields Goldfarb & Taylor, Phoenix
By DeeAn Gillespie Strub, John Foley
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Emily M. Stokes
*Counsel for Department of Child Safety*

The Huff Law Firm, Tucson
By Laura J. Huff, Daniel Huff
*Counsel for Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Maurice Portley[1] delivered the decision of the Court, in which Vice Chief Judge David B. Gass and Judge Brian Y. Furuya joined.

---

**P O R T L E Y**, Judge:

¶1   Bianca J. ("Mother") appeals the juvenile court's order terminating her parental rights to her minor child ("J.J."). Mother both challenges the juvenile court's written Findings of Fact and Conclusions of Law under Arizona Rule of Procedure for the Juvenile Court ("Rule") 353[2] and argues insufficient evidence supports the termination order. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2   Mother gave birth to J.J. in August 2017. About 13 months later, the Department of Child Safety ("DCS") removed him from Mother's care. At the time, Mother, J.J., and another child, K.J.[3], were living in a shelter. DCS acted after receiving reports from others in the shelter that Mother was not feeding J.J. (and prevented others from feeding him), was leaving J.J. alone in her bedroom for extended periods of time, and suggested to people around her that she did "not like" J.J. The DCS case manager reported that when J.J. was removed he was one year old but was "so small that he look[ed] to be 6 months old" and appeared "very malnourished."

¶3   J.J. was taken to Phoenix Children's Hospital, where he remained for nearly a week. J.J.'s medical records stated he had "moderate protein-calorie m[alnutrition]," had a distended abdomen, and was in the first percentile for weight, all of which was described as a "failure to thrive." Additionally, J.J. had scratches, abrasions, and bruises on his face and body,

---

[1] The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2] Rule 353 was enacted on an emergency basis in 2021, replacing Rule 66 and becoming fully effective in July 2022. There were no relevant substantive changes between Rules 66 and 353(h).

[3] K.J. is not a part of this appeal.

and the medical staff suspected he suffered physical child abuse. Although Mother alleged that a refeeding issue caused J.J.'s malnourishment, at discharge the medical records stated there was "[n]o concern for refeeding syndrome," and J.J. gained about one pound while in the hospital.

¶4            DCS placed J.J. with a foster family. In foster care, J.J. continued to gain weight and thrive despite periodic health issues.

¶5            The juvenile court found J.J. dependent in January 2019 after Mother failed to attend the pretrial conference despite prior warnings about the consequences of failure to appear. The juvenile court adopted a reunification plan and ordered DCS to provide services to Mother to help towards reunification, including psychological and psychiatric evaluations, counseling, intensive parenting classes, and therapeutic visits, though DCS initially denied Mother visits with J.J.

¶6            At the permanency hearing, the juvenile court changed the case plan to termination, and in December 2020, DCS moved to terminate Mother's parental rights alleging she neglected or failed to protect J.J. from neglect pursuant to Arizona Revised Statutes ("A.R.S.") § 8-533(B)(2). After a 15-day trial, during which the juvenile court heard testimony, received exhibits, and heard the arguments from counsel, the juvenile court terminated Mother's parental rights as to J.J.

¶7            The juvenile court made oral statements, including findings, on the record and terminated Mother's parental rights. Then the juvenile court directed DCS to submit proposed Findings of Fact and Conclusions of Law, which it did, and Mother filed an objection. Even so, the juvenile court signed the Findings of Fact and Conclusions of Law on June 27, 2022.

¶8            Mother timely appealed, and we have jurisdiction under Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A), and -2101(A).

## DISCUSSION

### I.    The Juvenile Court's Findings of Fact Were Sufficient Under Rule 353.

¶9            On appeal, Mother contends the juvenile court erred by signing the Findings of Fact and Conclusions of Law presented by DCS, which contained a portion of the factual allegations from the termination petition. Mother characterizes the juvenile court's action as an "abdicat[ion] [of] responsibility" under Rule 353.

**¶10** "We review interpretations of court rules de novo, employing the principles of statutory construction to best reflect the intent of the Arizona Supreme Court." *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240 ¶ 20 (App. 2012). A petitioner seeking termination of parental rights must prove at least one ground for termination under A.R.S. § 8-533 by clear and convincing evidence, *Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 334 ¶ 9 (2009), and prove by a preponderance of the evidence that the termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284 ¶ 22 (2005). If the juvenile court finds that DCS met its burden, Rule 353(h) requires the juvenile court make specific findings of fact in writing sufficient to support termination. Rule 353(h)(2)(A); A.R.S. § 8-533(A).

**¶11** We have held that Rule 353(h) has a two-fold purpose. First, "findings of fact and conclusions of law should be sufficiently specific to enable the appellate court to provide effective review." *Ruben M.*, 230 Ariz. at 241 ¶ 25; *see also Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 538 ¶ 18 (App. 2018) ("We have long emphasized that the purpose of requiring written findings is to aid appellate review."). Specifically, the written findings should allow us to "determine exactly which issues were decided and whether the lower court correctly applied the law." *Ruben M.*, 230 Ariz. at 240 ¶ 24. Second, Rule 353(h) also "prompt[s] judges to consider issues more carefully because they are required to state not only the end result of their inquiry, but the process by which they reached it." *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 296 ¶ 13 (App. 2020) (quoting *Logan B.*, 244 Ariz. at 538 ¶ 18).

**¶12** Although the court's written findings must include all "ultimate" facts necessary to resolve the disputed issues, they need not include every "evidentiary fact[] upon which the ultimate facts are based." *Ruben M.*, 230 Ariz. at 241 ¶ 25. "Ultimate facts are *at least* the essential and determinative facts on which the conclusion was reached." *Logan B.*, 244 Ariz. at 537 ¶ 15 (cleaned up).

**¶13** Contrary to Mother's arguments, if a juvenile court adopts DCS's proposed finding and conclusions filed at the juvenile court's direction, the findings may still fulfill the Rule's protective functions. Here, the signed Findings of Fact and Conclusions of Law are sufficiently specific to show which "ultimate facts" the juvenile court relied on in making its decision— J.J.'s malnourishment, his failure to thrive, and non-accidental abuse. The Rule does not require the juvenile court to weigh evidence in the findings, nor describe every underlying evidentiary fact it considered, or rejected, in reaching its decision. *See Ruben M.*, 230 Ariz. at 241 ¶ 25. And in this case, the signed Findings of Fact and Conclusions of Law show the

ultimate facts the juvenile court relied on in making its determination to terminate Mother's parental rights.

¶14 Further, signing the proposed pleading does not show that the juvenile court failed to carefully consider the trial facts or issues. In fact, at the end of the trial, the juvenile court orally and on the record outlined how it weighed the evidence and found DCS had not proven the time-in-care allegation by clear and convincing evidence. Given the oral findings and the signed written findings, the juvenile court made sufficiently specific findings supporting the termination of Mother's parental rights.

## II. Sufficient Evidence Supports Termination.

¶15 Mother also claims insufficient evidence supports the juvenile court's determination that DCS proved one ground for termination by clear and convincing evidence,[4] arguing the juvenile court should have relied on different evidence within the record. We disagree.

¶16 Termination of a parent-child relationship may be based on evidence that "the parent has neglected or wil[l]fully abused a child," including causing physical or emotional injury. A.R.S. § 8-533(B)(2). Neglect is defined as a parent's inability or unwillingness to provide a child with supervision, food, clothing, shelter, or medical care if it causes "substantial risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a).

¶17 On appeal, we defer to the juvenile court's findings unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 4 (App. 2002). We will affirm a termination order unless it is clearly erroneous and view the evidence and any reasonable inferences in the light most favorable to upholding the court's decision. *Id.* at 282 ¶ 13. Furthermore, as the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004)). And on appeal we do not reweigh the evidence. *Id.*

¶18 Mother's argument asks us to reweigh evidence, which we will not do.

¶19 The medical records from J.J.'s stay at Phoenix Children's Hospital and the DCS case manager's report demonstrated that J.J. was

---

[4] Mother does not appeal the juvenile court's best-interests determination.

neglected by Mother while they were living in the shelter, was not fed, was left alone, ended up malnourished, and was failing to thrive. And contrary to Mother's argument, J.J.'s medical records suggested his malnourishment resulted from Mother's neglect, not from a refeeding or other medical issue.

**¶20**		The facts presented at trial and contained in the written findings reasonably support the juvenile court's determination that Mother had neglected J.J., causing a substantial risk of harm to his health and wellbeing. *See* A.R.S. §§ 8-201(25)(a), -533(B)(2). Although there was conflicting evidence for the juvenile court to consider, there is no indication that the experienced juvenile court failed to do so.

## CONCLUSION

**¶21**		For these reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: CC