NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO N.H.

No. 1 CA-JV 23-0044
FILED 9-26-2023

Appeal from the Superior Court in Maricopa County
No. JS21067
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

APPEARANCES

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Shana L., Surprise
*Appellee*

---

**MEMORANDUM DECISION**

---

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Andrew M. Jacobs and Chief Judge David B. Gass joined.

---

**B R O W N**, Judge:

¶1         In this private severance proceeding, Michael H. ("Father") appeals the juvenile court's order terminating his parental rights as to his daughter, N.H. (born in 2016).[1] Father challenges the court's finding that termination was in N.H.'s best interests. For the following reasons, we affirm.

## BACKGROUND

¶2         Father and Shana L. ("Mother") are N.H.'s biological parents. In 2008, Mother gave birth to N.D.H., who Father later adopted. Following a 2017 domestic dispute that occurred when the parties were living in Nevada, Father left the family home and has since lived with his elderly parents as their caretaker, currently residing in Texas.

¶3         A Nevada court issued a divorce decree in January 2018, granting Mother and Father joint legal custody of the children, with Mother being the primary custodial parent. The court ordered Father to pay child support. The visitation schedule in the decree allowed Father in-person visitation in Las Vegas and three video calls weekly. Mother and the children moved to Washington in 2019 and about two years later, they moved to Arizona. Mother married Christopher L. ("Stepfather") in October 2021.

¶4         In June 2022, Mother petitioned to terminate Father's rights as to N.H. and N.D.H., alleging that Father had abandoned the children under A.R.S. § 8-533(B)(1) by failing to maintain a normal parental relationship. Mother asserted that Father had not actively parented the children since the divorce, engaged only in limited communication through occasional video calls lasting about five minutes each, did not send the children any cards or

---

[1]     The juvenile court found that Father consented to the termination of his parental rights to his older daughter, N.D.H. On appeal, Father does not challenge that finding.

letters, and had paid no child support. Mother also alleged termination would be in the children's best interests because Stepfather has been their "psychological father" since January 2021 and the children wished to be adopted by him.

¶5          Several weeks later, a social worker conducted a social study, which included interviews with Mother, her husband, Father, and the children. After reviewing various records and conducting the interviews the social worker issued a report, concluding in part that Father had abandoned the children and the children were "in a stable loving home" that provided permanency and safety. The report recommended terminating Father's parental rights so "the plan of adoption [could] be implemented."

¶6          The superior court held a conference with the Nevada court in compliance with the Uniform Child Custody Jurisdiction and Enforcement Act. *See* A.R.S. § 25-1010. During that conference, Nevada ceded its exclusive, continuing jurisdiction to Arizona, allowing the superior court to move forward as N.H.'s home state. *See* A.R.S. §§ 25-1002(7) (defining "home state"), -1032 (defining "exclusive continuing jurisdiction").

¶7          At the subsequent termination hearing, held over the course of three days, Mother testified about Father's limited contact with the children, and that she never denied him the opportunity to contact the children. Mother also described how Stepfather had "bonded very quickly" with N.H., he was deeply involved in N.H.'s day-to-day care, and they both wanted to proceed with adoption. Explaining that adoption would bring the children "stability" and "happiness," Mother opined that termination of Father's parental rights would be in the children's best interests.

¶8          Addressing his relationship with N.H., Father testified that Mother had reduced his ability to call and visit with N.H., he had not seen N.H. in person since 2018, he had not paid any child support, he had no idea how much he was in arrears, and he was unable to obtain employment or visit N.H. because he takes care of his elderly parents, who have various medical needs.[2] The court also heard testimony from Stepfather and Father's sister.

---

[2]     Father testified that his stimulus check "went straight to child support," but he did not provide supporting documentation.

**¶9** In its later ruling, the juvenile court found that Mother proved by clear and convincing evidence that "Father failed to maintain a normal parental relationship with [N.H.] without just cause for a period of six months prior to the filing of the Petition, and the Court heard no evidence to rebut this *prima facie* finding of abandonment." The court found in part that although Father "is able to parent" N.H., "he has made choices that resulted in no meaningful or normal parent-child relationship" and thus Mother met her burden to show that Father had abandoned N.H.

**¶10** Addressing best interests, the court recognized it was Mother's burden to prove by a preponderance of the evidence that termination is in the children's best interests. The court then found in part that although there was no evidence "that the children would be harmed if the Court denied the request to terminate," the termination would benefit the children because of the permanency and stability they could experience through adoption by Stepfather, as both he and the children were seeking, and that benefit was in the children's best interests. The court therefore terminated the parent-child relationship between Father and the children. Father timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

**¶11** We review a termination order issued by the juvenile court under the following principles recently clarified by our supreme court.

**¶12** First, we "review the factual findings made by the juvenile court, and its factual findings will be accepted 'if reasonable evidence and inferences support them.'" *Brionna J. v. Dep't of Child Safety*, ___ Ariz. ___, ___, ¶ 13, 533 P.3d 202, 209 (2023) (citation omitted). "This deferential standard is warranted '[b]ecause the juvenile court is in the best position to weigh evidence and assess witness credibility.'" *Id.* (citation omitted). This applies to the grounds for termination as well as the court's determination of whether termination is in the child's best interests. *See id.*; *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018) (explaining that in addressing best interests, the juvenile court's factual findings will be accepted if supported by reasonable evidence and the related inferences).

**¶13** Second, the juvenile court's "legal conclusions regarding the statutory ground for termination—which must be established by "'clear and convincing'" evidence at the juvenile court level—will be affirmed unless they are clearly erroneous." *Brionna J.*, ___ Ariz. ___, ¶ 31, 533 P.3d at 209–10 (citation omitted). Similarly, the court's legal conclusions

regarding best interests—which must be established by a preponderance of the evidence—will be affirmed unless they are clearly erroneous. *See Alma S.*, 245 Ariz. at 151, ¶ 18 (explaining, in the context of best interests, that an appellate court "will affirm a severance order unless it is clearly erroneous").

¶14 Father does not contest the court's finding that Mother proved by clear and convincing evidence that he abandoned both children. He only contests the court's finding that termination was in N.H.'s best interests. He argues the court did not consider the totality of the circumstances in its best-interests analysis, contending the court abused its discretion by "ignoring" some evidence and giving Mother's testimony more credibility than Father's.

¶15 In addressing best interests, "we can presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence." *Kent K. v. Bobby M.*, 210 Ariz. 279, 286, ¶ 35 (2005). Once a court finds "that a parent is unfit, the focus shifts to the interests of the child as distinct from those of the parent." *Id.* at 285, ¶ 31. The court's primary concern must be the child's interest in stability and security. *Alma S.*, 245 Ariz. at 150, ¶ 12. But we cannot assume termination will benefit a child simply because she has been abandoned. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 14 (2016) (citation omitted).

¶16 Termination is in the child's best interests if the child will either benefit from termination or be harmed if it is denied. *Alma S.*, 245 Ariz. at 150, ¶ 13. Whether a severance proceeding is initiated privately or by the State, the juvenile court "may conclude that a proposed adoption benefits the child and supports a finding that severance is in the child's best interests." *Demetrius L.*, 239 Ariz. at 2, ¶ 1. In determining the best interests of the child, a court considers the totality of the circumstances at the time of termination. *Alma S.*, 245 Ariz. at 150–51, ¶ 13.

¶17 Father argues the court abused its discretion by ignoring or failing to account for (1) Mother's actions in changing and limiting his video calls with N.H., (2) issues with Mother's credibility, (3) Mother's decision to terminate N.D.H.'s "first adoptive father's parental rights in the same fashion," and (4) N.H.'s seemingly inadequate understanding of permanently terminating Father's rights.

¶18 To the extent Father argues the juvenile court abused its discretion by giving greater weight to Mother's testimony, and finding

Father's testimony less credible, that court is in the best position to weigh evidence, assess witness credibility, and resolve disputed facts. *See Brionna J.*, ___ Ariz. ___, ¶ 30, 533 P.3d at 209; *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).

**¶19** Father's arguments focus in part on the premise that Mother interfered with his relationship with N.H., including "changing [or] limiting . . . video calls" and that she intended to terminate Father's rights in the same fashion as she had done with N.D.H.'s prior adoptive father. But we do not reweigh evidence on appeal, and we presume the court has considered all evidence in making its decision. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004); *see also Fuentes v. Fuentes*, 209 Ariz. 51, 55–56, ¶ 18 (App. 2004).

**¶20** Nothing in the record suggests the juvenile court "ignored" these arguments made by Father. Instead, the court addressed Father's contention that "his inability to communicate with [N.H.] was related to [Mother's] attempts to interfere with and alienate the children." The court found Father's testimony lacked credibility because he "did not attempt to arrange a set time to speak with the child or maintain any regular form of communication through telephone, videochat, or even sending letters or cards." The court also found that the testimony indicated the infrequent phone calls that did occur were very brief and that Father did not have conversations with Mother to "try to increase his contact with N.H. or to learn more about her. He did not return to Court to enforce his visitation or contact."

**¶21** Father also suggests the court erred by considering N.H.'s wishes to be adopted by her Stepfather because "N.H. did not seem to understand permanent termination" of Father's rights. But N.H. did express that she wanted to be adopted by Stepfather, who lives with her and cares for her already. Again, it is not our role to reweigh evidence on appeal. *See Mary Lou C.*, 207 Ariz. at 47, ¶ 8.

**¶22** Moreover, reasonable evidence supports the court's finding that N.H. would benefit from termination. Although Father had a more active and present role in N.H.'s life when she was an infant, he has been mostly absent from N.H.'s life since the divorce was finalized in early 2018. Father has not seen or visited N.H. in person since 2018, and the video calls have been infrequent and brief. Father has not paid child support and is in arrears of approximately $98,000. Although Father claims that Mother has interfered with his relationship with N.H., including "changing and

limiting . . . video calls," he did not provide any evidence showing he has made diligent efforts to enforce his parental rights.

¶23      As the juvenile court recognized, although N.H. is very young, she nonetheless expressed a desire for Stepfather to adopt her, and he wished to adopt her. Stepfather has been present in N.H.'s life, is bonded with her, and supports her financially, academically, and emotionally. Therefore, the court's legal conclusion—that termination of Father's parental rights is in N.H.'s best interests based on the permanency and stability adoption can provide—is not clearly erroneous.

## CONCLUSION

¶24      We affirm the juvenile court's order terminating Father's parental rights as to N.H.



AMY M. WOOD • Clerk of the Court
FILED:   AA