NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO K.C.

No. 1 CA-JV 24-0132

FILED 04-29-2025

Appeal from the Superior Court in Maricopa County
No. JD40497
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

David W. Bell, Mesa
*Counsel for Appellant Father*

Maricopa County Legal Advocate's Office, Phoenix
By Amanda L. Adams
*Counsel for Child K.C.*

Arizona Attorney General's Office, Tucson
By Marika J. Hodge
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Angela K. Paton joined.

_____

**T H U M M A**, Judge:

¶1         Randy C. (Father) challenges the superior court's order terminating his parental rights to his child K.C. Although not challenging the finding of prolonged substance abuse, Father argues the court "did not properly assess the totality of circumstances in making its best interests determination." Because Father has shown no error, the order is affirmed.

### FACTS AND PROCEDURAL HISTORY

¶2         K.C. was born on January 31, 2021, substance exposed to methamphetamine. The Department of Child Safety (DCS) immediately took K.C. into care. Father reported at the time that he was using methamphetamine, fentanyl and marijuana in addition to methadone treatment for his heroin addiction. K.C. was placed in foster care while Kristin G. (Mother) and Father addressed their substance-abuse issues, demonstrating a period of sobriety.[1] In January 2022, the court returned K.C. to parents' custody and dismissed the dependency.

¶3         In mid-2022, Father and Mother relapsed and apparently used methamphetamine and other illegal drugs over the next year. In September 2023, police officers responded to reports that Father was at a gas station, "in and out of consciousness" and apparently under the influence of a controlled substance, while attempting to care for K.C. Father was found in possession of drug paraphernalia, including a glass pipe, burnt foils with drug residue and "melted straws commonly used to smoke dangerous drugs," some of which were found in K.C.'s stroller. Father was arrested and K.C. was treated at a hospital, where she tested positive for methamphetamine. DCS took K.C. into care and she was placed with her prior foster family.

_____

[1] Mother, whose parental rights have been terminated, did not appeal that decision and is not part of this appeal.

¶4 In September 2023, DCS filed a dependency petition alleging, as to Father, substance abuse and neglect. The court adjudicated K.C. dependent as to Father in February 2024, when Father failed to appear at an initial dependency hearing with no good cause shown. The court adopted a family reunification case plan, with a concurrent case plan of severance and adoption. DCS provided Father with referrals for drug treatment and testing, parenting classes and supervised visitation. Father enrolled in detox programs three times, but left before the program was completed and failed to engage in the recommended substance-abuse treatment after detox. He failed to appear for hearings and maintained minimal contact with DCS despite DCS' efforts to have him re-engage. Father was repeatedly late to visits with K.C. or would miss the visit altogether.

¶5 In March 2024, DCS filed a motion to terminate Father's parental rights based on prolonged substance abuse. In May 2024, Father was arrested on an outstanding misdemeanor warrant after police officers saw him "dropping a piece of foil with burn marks." Father pled guilty to the misdemeanor and was incarcerated until mid-August 2024. DCS served him with the severance motion while he was in custody and referred him for virtual visits with K.C.

¶6 At a contested termination adjudication in July 2024, Father testified he was interested in participating in services to regain custody of K.C. He testified he had remained sober throughout his recent incarceration and was ready to engage in substance abuse treatment once he was released. He also testified he had plans to live with his sister once he was released and anticipated having employment with his previous employer.

¶7 The DCS case manager testified terminating Father's parental rights was in K.C.'s best interests because it would provide permanency and stability. K.C. had developed a significant relationship with her placement, a family she had spent more than half of her life with, and the family was willing to adopt her and provide her with the permanency and stability she needed. The DCS case manager also testified Father's substance abuse remained a concern because he had been unable to stay consistently sober in the past and his current sobriety was in a "controlled environment." Upon the conclusion of testimony, the court took the matter under advisement.

¶8 In an August 2024 ruling, the court granted the termination motion, finding DCS had proven, by clear and convincing evidence, prolonged substance abuse as grounds for termination. The court also

found DCS had "proven by a preponderance of the evidence it would be in the child's best interests to terminate the parental rights." This court has jurisdiction over Father's timely appeal under Arizona Revised Statutes (A.R.S.) sections 8-235(A), 12-120.21 and 12-2101(A)(1) (2025).[2]

**DISCUSSION**

**¶9**   As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground specified in A.R.S. § 8-533(B) has been proven, *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000), and by a preponderance of the evidence that termination is in the best interests of the child, *Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005). "Because the superior court 'is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts,' this court will affirm an order terminating parental rights so long as it is supported by reasonable evidence." *Aleise H. v. Dep't of Child Safety*, 245 Ariz. 569, 572 ¶ 7 (App. 2018) (citation omitted).

**¶10**   Father does not challenge the court's findings on the statutory ground of prolonged substance abuse. Instead, he argues the court "did not properly assess the totality of circumstances in making its best interests determination." DCS argues, with some force, that Father waived his best interests challenge by not first raising it with the superior court. *See* Ariz. R.P. Juv. Ct. 317(a)(2). Waiver notwithstanding, however, Father's argument fails.

**¶11**   "[A] determination of the child's best interest[s] must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) (citing cases). The "child's interest in stability and security" must be the court's primary concern. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 15 (2016) (citing cases). In making its determination, the court must consider the totality of the circumstances, including whether the current placement is meeting the child's needs, the child's adoptability and the parent's efforts towards rehabilitation. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148 ¶ 1 (2018); *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98-99 ¶¶ 10-12 (App. 2016). The record is viewed in the light most favorable to upholding the best interests finding, and findings of fact are

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

affirmed "if reasonable evidence and inferences support them." *See Demetrius L.*, 239 Ariz. at 3-7 ¶¶ 2, 9, 22.

¶12 The superior court found K.C. is in an adoptive placement that meets her needs and will provide her with the permanency and stability she needs. The court also found K.C. is "adoptable should the current placement be unable or unwilling to adopt." The court further found "failure to terminate the parental rights of [Father] will be detrimental to [K.C.]" because it "would result in the child lingering in foster care indefinitely." And this is supported by the court's finding that Father's "substance use will [likely] continue for a prolonged and indeterminate period." These findings, which support the best interests determination, are supported by the trial evidence.

¶13 Father suggests the court did not consider his testimony where he "expressed his love for his daughter," "indicated his willingness to cooperate in services upon his release from jail and credibly testified to his recent sobriety while in custody." That is not the case. The court commended Father for his sobriety while in custody, but added he "has not yet been able to maintain sobriety for a significant period of time outside an institutional environment." Father has a long history of drug abuse, previously relapsed after K.C. was returned to his care, used illegal drugs in K.C.'s presence and "in [a] manner that resulted in [K.C.] testing positive for methamphetamines" and had not "consistently participated in substance abuse treatment or testing" despite attending detox three times. Father is essentially seeking to reweigh the evidence, but this court's "task for factual findings is solely to confirm that there is some reasonable evidence in the record to sustain them." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 336 ¶ 14 (App. 2004) (citing cases). Father has shown no error in the superior court's best interests findings.

**CONCLUSION**

¶14 The order terminating Father's parental rights to K.C. is affirmed.

