NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO M.L.

No. 1 CA-JV 25-0067

FILED 11-21-2025

---

Appeal from the Superior Court in Yavapai County
No. V1300JD820060038
The Honorable Anna C. Young, Judge

**AFFIRMED**

---

COUNSEL

Law Office of Florence M. Bruemmer PC, Anthem
By Florence M. Bruemmer
*Counsel for Appellant Father*

Arizona Attorney General's Office, Phoenix
By Meredith Oakes Peterson
*Counsel for Appellee Department of Child Safety*

Maricopa County Legal Defender's Office, Phoenix
By Jelena Radovanov
*Counsel for Appellee Child*

---

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Andrew M. Jacobs joined.

---

**C A T L E T T**, Judge:

¶1 Richard L. ("Father") appeals the juvenile court's order terminating his parental rights to M.L. ("Child"). Father challenges whether the Department of Child Safety ("the Department") established two statutory grounds for termination—neglect, *see* A.R.S. § 8-533(B)(2), and a history of chronic abuse of dangerous drugs, *see* A.R.S. § 8-533(B)(3). He also challenges whether termination was in Child's best interests. We affirm termination.

## FACTS AND PROCEDURAL HISTORY

¶2 Father and Rhiannon M. ("Mother") are Child's biological parents. Child was born in California in November 2024. Shortly thereafter, Mother returned to Arizona, but Father remained in California with Child.

¶3 The Department received a hotline report that Child had been exposed to substances before birth. During its initial investigation, the Department discovered Father had an open dependency proceeding involving another child due to substance abuse. He tested positive for methamphetamine, amphetamine, and THC earlier in November 2024 and failed to participate in rehabilitative services. Due to these concerns and unable to locate Father or Child, the Department initiated ex parte proceedings for temporary custody of Child and to declare Child dependent.

¶4 The court issued an order allowing the Department to take temporary custody of Child and informing Father he could be arrested if found with Child. On December 3, 2024, Father returned to Arizona and gave Child to Child's paternal grandmother ("Grandmother"). That same day, Grandmother notified the Department she had Child, and the Department took Child to Verde Valley Medical Center. Doctors and the Department discovered that Child had a heart murmur; his toes were blue, he was making strange noises, and he was exhibiting early-stage heart

failure. Because Child required urgent medical care, Child was airlifted to Flagstaff Medical Center. Medical staff later informed the Department that the heart murmur was no longer a concern, but Child had a hole in his heart requiring follow up. When the hospital discharged Child several hours later, the Department gave custody to Grandmother.

¶5            On December 4, the court held a preliminary hearing and ordered Father to complete a hair follicle and urinalysis test. Father did not comply. The next day, the Department moved to terminate Father's rights based on neglect and chronic abuse of dangerous drugs. *See* A.R.S. §§ 8-533(B)(2), (3).

¶6            At the termination hearing, Father testified that despite knowing Mother's due date was close, he traveled with her to California. Father admitted instructing hospital staff where Child was born not to perform any additional testing without his approval because he "deemed [Child] safe and healthy." He then agreed with Mother to leave the hospital against medical advice. Father acknowledged he left with Child despite hospital staff's concerns about Child's possible heart murmur, which they wanted to monitor.

¶7            Father explained he remained in California to keep Child away from the Department. He returned to Arizona only because Grandmother was worried the Department "was going to put out a kidnapping charge" on him. Mother confirmed Father did not keep in contact with her—she knew only that he was at a family member's home in California—and Father had no plans to return to Arizona. Mother learned Father returned to Arizona only after he gave Child to Grandmother.

¶8            A Department specialist testified about Child's current placement. She believed Grandmother met Child's needs and is willing to adopt. She stated that if Grandmother was unable to adopt Child, he is otherwise adoptable. She also confirmed that Child did not have any special behavioral or educational needs. But she warned that it is too early to know the effects of Child's substance exposure, and he has been diagnosed as having a hole in his heart.

¶9            The court terminated Father's rights based on neglect and a history of chronic substance abuse. The court concluded that the Department proved by clear and convincing evidence that Father "neglected [Child] or failed to protect [Child] from neglect." *See* A.R.S. § 8-533(B)(2). Specifically, Father was "unable or unwilling to provide [Child] with . . . medical care . . . which caused a substantial risk of harm to

[Child's] health and/or welfare[.]" A.R.S. § 8-201(25)(a). The court found that Father's conduct before Child's birth, his efforts to prevent Child from receiving necessary care, and Child's condition when the Department obtained custody supported that Father neglected Child.

**¶10** For the chronic abuse of dangerous drugs ground, the court relied on Father's failure to meaningfully engage rehabilitative services in the ongoing dependency action initiated a year before Child's birth, his positive drug test in early November 2024, and his refusal to participate in further testing. *See* A.R.S. § 8-533(B)(3). The court concluded that, because of Child's age and vulnerability, Child needs a parent who can safely care for him, and Father is unable to do so.

**¶11** The court also concluded termination was in Child's best interests. The court found Child's current adoptive placement meets Child's needs and Child is otherwise adoptable. Child's placement with Grandmother is the least restrictive means. And adoption "would provide [Child] with permanency and stability" while continuing the parent-child relationship would require Child "to linger in care for an indeterminate period" without "parents who are able to care for him."

**¶12** Father timely appealed. We have jurisdiction. A.R.S. § 8-235(A).

## DISCUSSION

**¶13** Father contends there was insufficient evidence to terminate his rights.

**¶14** "Parents have a fundamental right to raise their children as they see fit, but that right is not without limitation." *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79 ¶ 14 (App. 2001). A court may terminate parental rights based on the grounds listed in A.R.S. § 8-533(B). *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49 ¶ 12 (2000). A party seeking termination must first prove, by clear and convincing evidence, that one of those grounds exists. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149 ¶ 8 (2018); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284 ¶ 22 (2005). The party must then prove, by a preponderance of the evidence, that termination is in the child's best interests. *Alma S.*, 245 Ariz. at 149–50 ¶ 8; *Kent K.*, 210 Ariz. at 284 ¶ 22. We review a termination order for an abuse of discretion. *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474 ¶ 14 (2022). We affirm the juvenile court's factual findings if reasonable evidence and inferences support them. *Brionna J. v. Dep't of Child Safety*, 255 Ariz 471, 478 ¶ 30 (2023).

## I.     Neglect

¶15         Father argues the court erred because its neglect findings were premised on the same allegations as its substance abuse findings.  But Father is mistaken.  The court's findings supporting neglect do not rely on allegations about Father's substance abuse.

¶16         Neglect justifying termination requires "[t]hat the parent has neglected or willfully abused a child."  A.R.S. § 8-533(B)(2).  Neglect includes "[t]he inability or unwillingness of a parent . . . to provide that child with . . . medical care" which "causes substantial risk of harm to the child's health or welfare[.]"  A.R.S. § 8-201(25)(a).  Father asserts there was no evidence he failed to provide Child with care causing a substantial risk of harm to Child's health or welfare.  We disagree.

¶17         Sufficient evidence supported termination based on neglect.  Father's own testimony and the Department's report confirmed Father knew about Child's medical needs; Father prevented hospital staff from providing necessary medical care to Child; and Father left with Child against medical advice.  Hospital staff confirmed they could not adequately check Child or address his heart murmur because Father left the hospital with Child when he was only ten hours old.  The record adequately supports the court's conclusion that Father was unable or unwilling to provide Child with necessary medical care.

¶18         Father also contends his actions did not cause a substantial risk of harm to Child because Child was "ultimately" found to be healthy and the hole in Child's heart is due to Mother's neglect.  Father primarily relies on the fact that Child does not now exhibit any special behavioral or educational needs and Child's heart murmur resolved.  But a neglect finding does not require permanent harm to the child; all that is required is that a parent's unwillingness to provide medical care "causes substantial risk of harm to the child's health or welfare[.]"  A.R.S. § 8-201(25)(a).

¶19         The record supports that the "substantial risk of harm" requirement was met.  Father admitted he stayed in California to keep Child away from the Department.  Father returned to Arizona only after the Department sought to obtain custody of Child.  By the time the Department obtained custody, Child's toes were blue, he was making weird noises, and he was experiencing symptoms consistent with early-stage heart failure.  Child's condition was urgent enough that he was airlifted to a different hospital.  Father ignores that Child's health improved because the Department provided Child with life-saving medical care, and that

5

Father knew of Child's needs and failed to provide him with appropriate care. Even if Child did not suffer permanent harm, the record supports that Father put Child at substantial risk of harm to his health or welfare. Lastly, Father's argument that the hole in Child's heart is due to Mother's neglect does not absolve Father of his own neglect.

**¶20** There is sufficient evidence supporting termination for neglect—a reasonable factfinder could conclude that the Department established neglect by clear and convincing evidence. *See* A.R.S. § 8-533(B)(2); *Brionna J.*, 255 Ariz. at 478 ¶ 30. Because we affirm termination on that ground, we need not address termination based on chronic substance abuse. *See Michael J.*, 196 Ariz. at 251 ¶ 27 (declining to consider other statutory grounds after affirming on one ground).

## II.    Best Interests

**¶21** Father also argues there was insufficient evidence that termination was in Child's best interests. The court found termination would benefit Child and continuing the parent-child relationship would harm him.

**¶22** Termination is in a child's best interests if a party proves by a preponderance of the evidence that the child will benefit from, or be harmed without, termination. *Alma S.*, 245 Ariz. at 150 ¶ 13; *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 16 (2016) (recognizing that because this standard is "[f]ramed in the disjunctive," a best interests finding may be supported by either). The court must consider all the circumstances at the time of termination. *Alma S.*, 245 Ariz. at 150–51 ¶ 13. A benefit from termination exists when an adoptive placement meets the child's needs, the child is adoptable, and an adoption plan "is otherwise legally possible and likely[.]" *Demetrius L.*, 239 Ariz. at 3–4 ¶ 12; *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 335 ¶ 8 (App. 2004) ("[T]he immediate availability of a suitable adoptive placement . . . support[s] a [termination] order.")

**¶23** Father does not contest the court's factual findings underlying its best interests finding. Father concedes Grandmother provides Child with a stable home. But Father contends termination was not in Child's best interests because he was bonded with Child and intended to participate in rehabilitative services. Contrary to Father's argument, the record sufficiently supports that termination would benefit Child because it would further adoption, thereby providing permanency and stability. Child has lived with Grandmother since December 2024, Child is bonded with her and she is meeting his needs, and she wants to adopt him. Even if

Child's current placement does not adopt him, he is adoptable. The juvenile court did not err in determining that termination was in Child's best interests. *Demetrius L.*, 239 Ariz. at 4–5 ¶¶ 14, 17.

## CONCLUSION

**¶24**      We affirm the order terminating Father's parental rights as to Child.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:      JR